SELVAGE, Appellant,

v.

EMNETT et al., Appellees.

[Cite as *Selvage v. Emnett*, 181 Ohio App.3d 371, 2009-Ohio-940.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 08CA3239.

Decided Feb. 24, 2009.

D. Joe Griffith, for appellant.

John R. Haas, for appellees.

ABELE, Judge.

{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment that enforced a settlement agreement. Virgil Selvage, plaintiff-appellant, raises the following assignment of error for review:

The trial court erred in enforcing a settlement agreement when plaintiff/appell[ant] did not agree to the specific terms.

{¶ 2} Appellant owns property in Scioto County that fronts a private road known as Taylor Road. He acquired the property from appellees, Howard and Penny Emnett, by a deed that conveyed a 5.104–acre tract, including 25 feet of Taylor Road. Appellees owned a right to use Taylor Road, but did not own the roadway. McDermott owns a 59.120–acre tract in Scioto County.

{¶ 3} On July 27, 2005, appellant filed a complaint against (1) appellees, (2) McDermott Industries, L.L.C., (3) Mary Pollock, and (4) First National Acceptance Company.[1] He alleged that (1) appellees were in breach of the warranty of title, (2) he has been damaged as a result of this breach of title because he did not receive value for the price he paid for the property, (3) he has had his quiet enjoyment of the property disrupted by others claiming superior title to the roadway, and (4) the land appellees conveyed to him has been diminished in value so as to render it valueless.

{¶ 4} Appellant complained that McDermott (1) bulldozed Taylor Road to widen it fivefold from its original ten-foot width, (2) has caused large trucks to traverse the road, coming within a few feet of his residence, which has created dust and debris that has inundated and destroyed his property, (3) has caused power lines to be installed on his property, (4) has caused his van to be towed and otherwise damaged, and (5) has performed other acts in violation of appellant's property rights. Appellant claimed that (1) he has suffered a diminution in the value of his property, (2) his personal property has been damaged or destroyed, (3) he has otherwise suffered financial injury, and (4) he has suffered severe emotional distress as a result of McDermott's actions.

{¶ 5} The trial court held a pretrial hearing with (1) appellant, who was unrepresented, (2) appellees' attorney, John Berry, and (3) McDermott's attorney. During the hearing, appellees' attorney informed the court that the parties had reached a settlement:

My name's John Berry. I represent Howard and Penny Emnett, who were the sellers to Mr. Selvage of this Taylor property, and we have entered into an agreement with Mr. Selvage that we will pay him purchase price back, which is

---

1. Howard and Penny Emnett are the only defendants who entered an appearance in this appeal.

$10,000, in return for a deed with good title. I'll have to do a title search, and we'll do all that within two weeks of today's date, and that would include Mr. Selvage's dismissal of prejudice of this action when we transfer the money and he transfers the title.

{¶ 6} The trial court asked appellant if that was his understanding of the agreement. Appellant stated, "That'll work." At the end of the hearing, the court asked the parties if the settlement resolved all issues. McDermott's attorney responded affirmatively.

{¶ 7} On April 14, 2008, appellees filed a motion to enforce the in-court settlement agreement. At the hearing to consider appellees' motion, the trial court listened to a recording of the March 18, 2008 hearing and determined that the settlement agreement is valid. Subsequently, the court issued an order to enforce the settlement agreement. This appeal followed.

{¶ 8} In his sole assignment of error, appellant asserts that the trial court erred by enforcing the settlement agreement. Appellant asserts that the terms of the oral settlement agreement are not clear and unambiguous. In particular, appellant claims that the oral statements were not clear as to whether the settlement agreement included his claims against McDermott. Appellant further asserts that no meeting of the minds occurred, because he did not understand that the settlement agreement included the dismissal of his claims against McDermott. Appellant thus alleges that he was unilaterally mistaken as to the terms of the settlement, which entitles him to rescission.

{¶ 9} A motion to enforce a settlement agreement presents a question of contract law, and "Ohio appellate courts must determine whether the trial court's order is based on an erroneous standard or misconstruction of the law. The standard of review is whether or not the trial court erred." *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.* (1996), 74 Ohio St.3d 501, 502, 660 N.E.2d 431.

{¶ 10} A settlement agreement is a contract designed to prevent or end litigation. Id. Settlement agreements are highly favored as a means of resolving disputes. *State ex rel. Wright v. Weyandt* (1977), 50 Ohio St.2d 194, 197, 4 O.O.3d 383, 363 N.E.2d 1387. A trial court possesses full authority to enforce a settlement agreement voluntarily entered into by the parties. *Mack v. Polson Rubber Co.* (1984), 14 Ohio St.3d 34, 36, 14 OBR 335, 470 N.E.2d 902.

It is preferable that a settlement be memorialized in writing. *Pawlowski v. Pawlowski* (1992), 83 Ohio App.3d 794, 798–799, 615 N.E.2d 1071. However, an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract. *Spercel v. Sterling Industries, Inc.* (1972), 31 Ohio St.2d 36, 39 [60 O.O.2d 20], 285 N.E.2d 324. Terms of an oral contract may be

determined from "words, deeds, acts, and silence of the parties." *Rutledge v. Hoffman* (1947), 81 Ohio App. 85 [36 O.O. 405], 75 N.E.2d 608, paragraph one of the syllabus; see, also, *Ford v. Tandy Transp., Inc.* (1993), 86 Ohio App.3d 364, 380, 620 N.E.2d 996.

"A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134.

"To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear," and if there is uncertainty as to the terms then the court should hold a hearing to determine if an enforceable settlement exists. *Rulli v. Fan Co.* (1997), 79 Ohio St.3d 374, 376, 377, 683 N.E.2d 337. However, "[a]ll agreements have some degree of indefiniteness and some degree of uncertainty. In spite of its defects, language renders a practical service. In spite of ignorance as to the language they speak and write, with resulting error and misunderstanding, people must be held to the promises they make." 1 Corbin on Contracts (Perillo Rev. Ed.1993) 530, Section 4.1.

*Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 15–17.

 {¶ 11} An oral settlement agreement is enforceable with the same degree of formality and particularity that applies to the enforcement of a binding contract. *Spercel,* 31 Ohio St.2d at 39, 60 O.O.2d 20, 285 N.E.2d 324. Thus, a settlement agreement cannot be unilaterally repudiated. *Mack v. Polson Rubber Co.,* 14 Ohio St.3d 34, 14 OBR 335, 470 N.E.2d 902, syllabus. "To permit a party to unilaterally repudiate a settlement agreement would render the entire settlement proceedings a nullity, even though * * * the agreement is of binding force." *Spercel,* 31 Ohio St.2d at 40, 60 O.O.2d 20, 285 N.E.2d 324. Rather, it can be set aside only for the same reasons that any other contract could be rescinded, such as fraud, duress, or undue influence. *Mack* at syllabus.

{¶ 12} In the case at bar, the record of the settlement hearing demonstrates that the parties reached a valid oral agreement to settle the case. Appellees' attorney set forth the terms of the agreement. Appellant acquiesced to those terms. The agreement stated that appellant would dismiss "this action." Although appellant claims that he did not understand that the dismissal of "this action" meant the dismissal of the entire case, including his claims against

McDermott, the entirety of the settlement-hearing discussion reveals that the parties intended that the entire action be dismissed. At the settlement hearing, appellant, appellees' attorney, and McDermott's attorney were present. After an off-the-record discussion, appellees' attorney announced that the parties had reached an agreement, and he recited the agreement on the record, stating that appellant had agreed to dismiss "this action" with prejudice. Appellant indicated his agreement to the settlement. At the conclusion of the hearing, the trial court asked the parties if the settlement resolved all of the issues. McDermott's attorney responded affirmatively. Appellant gave no indication that he believed that his claims against McDermott would remain following the settlement. Neither appellees' nor McDermott's attorney acted as though any claims remained. Finally, the trial court treated the settlement as disposing of all claims.

{¶ 13} The plain meaning of "action" is " '[a] civil or criminal judicial proceeding.' " *McNeil v. Kingsley* (2008), 178 Ohio App.3d 674, 899 N.E.2d 1054, at ¶ 49, quoting Black's Law Dictionary (8th Ed.2004) 31. Thus, the oral agreement to dismiss "this action" meant the civil proceeding. It was not limited to one, single cause of action or certain claims against a certain party. Additionally, appellant cannot now claim that he did not understand the meaning of the agreement by virtue of his pro se status. It is well established that pro se litigants are held to the same rules, procedures, and standards as litigants who are represented by counsel, and must accept the results of their own mistakes and errors. See, e.g., *Dayton Power & Light v. Holdren,* Highland App. No. 07CA21, 2008-Ohio-5121, 2008 WL 4436003; *Atkins v. Ohio Dept. of Job & Family Servs.,* Franklin App. No. 08AP–182, 2008-Ohio-4109, 2008 WL 3522452. Therefore, we disagree with appellant that the oral settlement agreement was ambiguous and, hence, unenforceable.

{¶ 14} Appellant next asserts that the settlement agreement is unenforceable because of his unilateral mistake. He claims that he was mistaken as to the exact terms of the settlement agreement, i.e., whether the settlement meant that all of his claims would be dismissed or just his claims against appellees.

The subject of unilateral mistake is addressed in 1 Restatement of the Law 2d, Contracts (1981) 394, Section 153, as follows: "Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake." The mistaken party must bear the risk of the mistake if: "(a) the risk is allocated to him by agreement of the parties, or (b) he is aware, at the

time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so." Id. at § 154.

*Southern Ohio Med. Ctr. v. Trinidad,* Scioto App. No. 03CA2870, 2003-Ohio-4416, 2003 WL 21991287, at ¶ 26.

{¶ 15} In the case at bar, the terms of the settlement agreement were clear. Appellant's alleged unilateral mistake was that he did not understand that "this action" meant the entire case, not just his claims against appellees. This "mistake" is not sufficient to rescind the contract, however. We find no evidence that either appellees or McDermott "had reason to know of the mistake or [that their] fault caused the mistake." See Restatement of the Law 2d, Contracts, supra, Section 153(b). Moreover, appellant's ignorance of the meaning of "this action" does not constitute a sufficient mistake. "In spite of ignorance as to the language they speak and write, with resulting error and misunderstanding, people must be held to the promises they make." *Kostelnik,* 96 Ohio St.3d 1, 770 N.E.2d 58, at ¶ 17, quoting 1 Corbin on Contracts (Perillo Rev.Ed.1993) 530, Section 4.1. Thus, the trial court did not err by enforcing the settlement agreement.

{¶ 16} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

KLINE, P.J., and McFARLAND, J., concur.