[Cite as *Seymour v. Hampton*, 2012-Ohio-5053.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| WILLIAM SEYMOUR, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 11CA821 |
| | : | |
| vs. | : | **Released: October 16, 2012** |
| | : | |
| VALORIE HAMPTON, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

APPEARANCES:

Richard E. Wolfson, Portsmouth, Ohio, for Appellant.

William S. Seymour, Appellee Pro Se.

McFarland, J.:

**{¶1}** Appellant Valorie Hampton appeals the trial court's entry designating Appellee William Seymour the legal custodian and residential parent of S.W.S. Appellant assigns the following error for our review:

> "THE TRIAL COURT ABUSED ITS DISCRETION IN
> AWARDING CUSTODY TO THE APPELLEE-FATHER; ITS
> DECISION WAS CONTRARY TO LAW AND EVIDENCE."

**{¶2}** Upon review of the record, we find the award of custody in this matter is supported by a substantial amount of credible and competent evidence.

Accordingly, the assignment of error is without merit, and is overruled. The judgment of the trial court is affirmed.

FACTS

{¶3} Appellant Valorie Hampton and Appellee William Seymour were never married. They are the biological parents of S.W.S., born on July 9, 2009. Since birth, S.W.S. has resided with Appellant-mother. On January 26, 2010, Appellee filed a complaint for custody and a supplementary motion for change of residential parent and legal custodian. On the same date, Appellee filed the required Declaration under Uniform Child Custody Jurisdiction and Enforcement Act, i.e. the UCCJEA affidavit. On February 25, 2010, Appellant responded with an answer and counter-claim, requesting that the complaint be dismissed and that she be granted legal custody.

{¶4} The matter came on for a pretrial hearing on April 6, 2010. On May 20, 2010, Appellant filed a motion to terminate parenting time, alleging that Appellee had assaulted their child. On May 27, 2010, an agreed entry establishing the mother as custodian and residential parent and granting the father supervised parenting time was filed.

{¶5} On June 2, 2010, the court heard the motion to terminate parenting time. Appellant and one friend testified on her behalf. The Court denied the motion in open court. On June 17, 2010, the court appointed a guardian ad litem,

(hereinafter "GAL"). On June 22, 2010 the court filed its entry denying the motion to terminate parenting time based on the alleged assault. The court also modified the temporary orders as to the father's parenting time. Later, the parties signed a memorandum entry filed August 3, 2010, continuing appellant's custodial status and Appellee's visitation.

{¶6} On August 9, 2011, Appellant's counsel filed a motion to withdraw from representation, based on the client's written request. The motion was granted. A final hearing on the motion for custody was originally scheduled for August 31, 2011. The hearing was continued until September 27, 2011.

{¶7} At the final hearing, the parties proceeded to act as their own counsel. The GAL presented her report to the parties just prior to the hearing. The trial court gave the parties approximately ten minutes to review the report before the hearing started. The report was filed on the same date.

{¶8} At the final custody hearing, Appellee testified. Appellee is currently unemployed but in the process of re-starting a lawn service and applying for factory work. He resides in Wellston, Ohio with his wife. Appellee acknowledged that he went to jail for ten days for domestic violence and that an order bars him from being on Appellant's premises. Appellee also called his mother, Candis Estep, and his father, William Arthur Seymour. Appellee's parents are not married and do not live together, but have assisted Appellee with child custody exchanges.

Ms. Estep resides in Waverly.  Mr. Seymour resides in Chillicothe.  Appellee also called his current wife Chantal Seymour, to testify on his behalf.  Chantal Seymour is a Navy veteran, honorably discharged, with three children of her own.

{¶9} Appellant also testified. S.W.S. is her only child. She receives governmental financial assistance for depression and anxiety disability.  She resides in Metropolitan Housing in Pike County.  She called the GAL and Glenn Schoolcraft, her fiancé, as witnesses. At the time of the hearing, Mr. Schoolcraft had lived with Appellant and S.W.S.  for four months.  He was in the process of applying for Social Security Disability. Mr. Schoolcraft also testified that he attended counseling with Appellant and that he had never seen her using drugs or alcohol.

{¶10} On October 4, 2011, the trial court filed its entry designating the Appellee-father as the custodian and residential parent.  This appeal ensued.

## ASSIGNMENT OF ERROR

I.     "THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING CUSTODY TO THE APPELLEE-FATHER; ITS DECISION WAS CONTRARY TO LAW AND EVIDENCE."

## LEGAL ANALYSIS

{¶11} We apply the same standard to a trial court's decision to award a party legal custody of a child that we apply to all child custody disputes-that is, we afford the utmost deference to a trial court's child custody decision.  See *In re*

*E.W.*, 4th Dist. Nos. 10CA18, 10CA19, 10CA20, 2011-Ohio-2123, ¶ 18, citing

*Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Consequently,

absent an abuse of discretion, a reviewing court will not reverse a trial court's

decision regarding child custody matters. See, e.g. *Bechtol v. Bechtol*, 49 Ohio

St.3d 21, 550 N.E.2d 178, (1990), syllabus. Thus,when "an award of custody is

being supported by a substantial amount of credible and competent evidence, such

an award will not be reversed as being against the weight of the evidence by a

reviewing court." *Bechtol* at syllabus; see also, *Davis v. Flickinger*, 77 Ohio St.3d

415, 418, 674 N.E.2d 1159, (1997).

{¶12} In *Davis*, the court explained the abuse of discretion standard that

applies in custody proceedings:

> 'Where an award of custody is supported by a substantial
> amount of credible and competent evidence, such an award will not
> be reversed as being against the weight of the evidence by a
> reviewing court. (*Trickey v. Trickey*, [1952]158 Ohio St. 9, 470
> O.O.481,106 N.E. 2d 772, approved and followed.)'
> The reason for this standard of review is that the trial judge
> has the best opportunity to view the demeanor, attitude, and
> credibility of each witness, something that does not translate well on
> the written page. As we stated in *Seasons Coal Co. v. Cleveland*,
> (1984),10 Ohio St. 3d 77, 80-81, 461 N.E.2d 1273, 1276-1277:
> 'The underlying rationale of giving deference to the findings
> of the trial court rests with the knowledge that the trial judge is best
> able to view the witnesses and observe their demeanor, gestures and
> voice inflections, and use these observations in weighing the
> credibility of the proffered testimony.***
> ***A reviewing court should not reverse a decision simply
> because it holds a different opinion concerning the credibility of the
> witnesses and evidence submitted before the trial court. A finding of

an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal.' This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well. "

Id. at 418-419.

Thus, reviewing courts should afford great deference to trial court custody decisions. *Pater v. Pater* (1997) 63 Ohio St.3d 393, 396, 588 N.E.2d 794.

{¶13} Appellant asserts that in awarding custody, the trial court failed to properly consider the evidence pursuant to O.R.C. 3109.04 and the GAL's report. More specifically, Appellant argues that the trial court failed to consider: (1) Appellee's prior history of domestic violence; (2) Appellee's failure to cooperate with the GAL; and (3) Appellee's failure to make child support payments and arrearages. This analysis necessitates review of the legal custody standard and the statutory factors set forth in R.C. 3109.04(F).

## A. LEGAL CUSTODY STANDARD

{¶14} In determining which of two parents would better meet a child's best interests, a trial court must follow R.C. 3109.04. Under the "best interests of the child" standard of R.C. 3109.04(E), R.C. 3109.04(F)(1) requires a trial court to consider all relevant factors, including, but not limited to:

(a)   The wishes of the child's parents regarding the child's care;

(b)      If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c)   The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d)   The child's adjustment to the child's home, school, and community;

(e)   The mental and physical health of all persons involved in the situation;

(f)   The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g)   Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abuse or neglectful act that is the basis for the adjudication; whether either parent or any member of the household of either parent previously has been convicted or of pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and

whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused or neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

We are not convinced that in ascertaining what would be in the best interests of S.W.S., the trial court failed to properly consider the factors enumerated in R.C. 3109.04(F). Initially, we note the trial judge stated at the close of the hearing that he would be reviewing the entire record.  His statement was as follows:

BY THE COURT:  Nothing additional.  Okay.  Alright.  I will take the matter under advisement which means that I will consider everything that I've heard plus what I've heard in the past and review the record and I will uh, draft an Entry and be sending it to all of you and uh, as I indicated earlier, uh, you each would have the right to appeal if you don't like what my decision is. Okay? Any  questions?

{¶15} Appellant argues that the trial court failed to properly consider the Appellee's history of domestic violence, and that said history was completely ignored. The guardian ad litem's report states as follows:

"When asked about his relationship with Valorie, he was honest with me about the relationship in regards to the domestic violence that had occurred between the two of them.  He was also forthcoming with the domestic violence that had occurred between him and his other children's mother.  He explained to me the classes and counseling that he was ordered to undergo for his anger management."

The GAL's report contained references to documents she reviewed, but were not attached, regarding instances of reported domestic violence in 2008 and 2010.

Appellant also highlights a confrontation at Walmart between Appellee and Appellant's fiancé, Glenn Schoolcraft.

{¶16} The evidence the trial court had before it also established violent behavior on the part of the Appellant. The trial court was in the best position to view the demeanor, attitude, and credibility of each witness. The court's entry of October 4, 2011, does not ignore the issue of violence, but states "Both parents seem to have anger management issues."

{¶17} A review of the record reveals Appellee's mother, Candis Estep, testified that the visitation exchanges were going well, with no problems, for a 2-3 months period. The visitation exchanges occurred at the local sheriff's department because of a restraining order Appellant obtained against Appellee. At some point, Ms. Estep called Appellant regarding the visits and a man answered the telephone. At first, the chatter in the background indicated that Appellant did not wish to take the call, but then she did and began cussing Ms. Estep. There was a verbal argument and Ms. Estep did not try to make contact again.

{¶18} Ms. Estep also testified regarding the domestic violence incident which occurred at her house. Appellant questioned Ms. Estep about calling the authorities because of what she characterized as Appellee's domestic violence towards her. Ms. Estep characterized the incident as an "argument." According to the testimony, Appellee was taken to jail.

{¶19} Appellee's current wife Chantal Seymour also gave testimony regarding violent behavior on the part of the Appellant. Ms. Seymour testified that on one occasion, Appellee and she went to pick up S.W.S. together. An hour or so later, Appellant "burst" into Candis Estep's home and tried to attack Chantal Seymour, who did not respond to the "attack." Appellee's father corroborated this testimony.

{¶20} In this matter, the witnesses presented by both sides can be considered self-serving. Most convincing may have been the testimony of the GAL. During her testimony, the GAL was given a final chance to clarify or expand on any issue she deemed important and for whatever reason, she chose not to expand on topic of Appellee-father's history of domestic violence. The GAL did articulate that she had "concerns with *the way the two act toward each other.*" (Emphasis added.)

{¶21} Here, the trial court had competent and credible evidence before it of violent behavior from both parties competing for custody of their minor child. Even the testimony of the guardian ad litem indicated that there were anger issues on both sides. The trial court was in the best position to assess the demeanor of the parties and the credibility of the other witnesses. Given these facts, we cannot say that the trial court erred and abused its discretion in its consideration of the evidence of violent behavior of the mother, as well as the father.

{¶22} Appellant also contends the trial court failed to properly consider the Appellee's lack of cooperation with the GAL. The GAL testified that neither she nor the child had visited Appellee's current home. She also testified that she had concerns about the child living with Appellee and his new family. Appellant asserts that Appellee was never able to arrange a home visit with the GAL.

{¶23} The transcript reveals that the GAL visited the mother's home twice. The GAL considered the home to be comfortable, large enough, and appropriate. Id. She noted that the child seemed comfortable there. The GAL testified that she had concerns with the child being in an unfamiliar environment. She testified to concerns that Appellee was not returning her phone calls to arrange a visit until the last minute. She acknowledged that construction on Appellee's home was ongoing and that he seemed proud of the home.

{¶24} The trial court also heard evidence that Appellee and his wife were purchasing their house and it would be paid for in eight months. Candis Estep testified that she had visited her son's home and that there would be room for the child there. Chantal Seymour also testified that there is room for the child to live with them and that she would "love" to have Appellee's child live with them. Although it is of legitimate concern that the GAL did not visit the Appellee's home where, potentially six children could be living under one roof, again we defer to the judgment of the trial court in observing the witnesses and weighing credibility.

It would appear from the testimony that living with the father, S.W.S. would be able to develop relationships with his grandparents, father and step-mother, and several other children. Although the mother's home was described in favorable terms, it may be the child would have very little exposure to other persons except for his mother and her fiancé. Given apparently credible testimony that the Appellee-father has an acceptable home to provide to S.W.S., we cannot say that the trial court erred and failed to somehow consider the Appellee's lack of cooperation with the GAL. Again, we decline to find an abuse of discretion on this basis.

{¶25} Finally, Appellant argues the trial court failed to properly consider the Appellee's failure to pay child support. We note at the beginning of the hearing, the trial court recited the statutory factors and, although not verbatim, did mention the issue of whether or not a parent has paid child support and arrearages. It does not appear the court ignored this issue but recognized in its entry of October 4, 2011: "The father has not paid court ordered child support as required. The father has not had any significant income for sometime, but has not asked for a support re-determination." [1]

{¶26} As noted above, the trial judge advised the parties he would be reviewing the entire record before he made his decision. The trial court's entry was

---

[1] The transcript is devoid of evidence on this issue, yet Appellant indicated in her closing statement that Appellee made a child support payment in July 2011.

filed approximately one week later. The entry made reference to a majority of the statutory factors and did contain the opinion that the mother had "routinely denied visitation." On the issue of visitation, the record reveals Appellant requested the August 3, 2010 visitation order terminated while Appellee was in jail, but the request was never granted. Mr. Schoolcraft testified that Appellee had never shown a desire to visit the child since he [Schoolcraft] had been living with Appellant. Appellee and his parents testified that Appellant failed to bring the child to the sheriff's department for custody exchanges and that she refused phone calls. Appellee concluded that since he was not allowed on her premises and she wouldn't return his parents' phone calls or show up, he would "give up" until the custody matter could be resolved in court.

{¶27} While both psychological experts and guardians ad litem play important roles in child custody matters and in evaluating the interest of children, their recommendations are not binding upon a trial court. *In re RN*, 10th Dist. No. 04AP-130, 2004-Ohio-4420, ¶4. The trial court must be free to evaluate all of the evidence and determine, based upon the entire record, the children's best interest. Id. (See also *Walton v. Walton,* 3rd Dist. No. 14-10-21, 2011-Ohio-2487, disagreeing that the trial court abused its discretion in failing to consider the testimony and report from a psychologist.) Here, we have no reason to believe that the trial court failed to properly consider the statutory factors as relates to the all

the evidence adduced at hearing. To expect that the trial court was bound by the guardian's report alone would require that the guardian's judgment be substituted for that of the trial judge.  See *Wheeler v. Wheeler,* 3rd Dist. No. 1-81-60, 1982 WL 6842. With regard to Appellant's assertion that the trial court failed to properly consider the GAL's report, we note again that the report, whether or not it was admitted as an exhibit at the hearing, was part of the lower court's record once it was filed.  As discussed at length above, the trial court advised the parties at the end of the hearing that he would take the matter under advisement and review the record.  That record would have included the GAL's report.

{¶28} Based on the transcript, it appears the trial court was faced with a difficult set of factors to evaluate.  Here, we recognize that "child custody decisions involve some of the most difficult and agonizing decisions that trial courts are required to decide, [and that] courts must have wide latitude to consider all of the evidence…." *In re E.W*., at ¶19.  See *Davis*,77 Ohio St. 3d 418; *Bragg v. Hatfield,* 152 Ohio App.3d 174, 2003-Ohio-1441, 787 N.E.2d,44, ¶24; *Hinton v. Hinton,* 4th Dist. No. 02CA54, 2003-Ohio-2785 at ¶ 9; *Ferris v. Ferris,* 4th Dist. No. 02CA4, 2003-Ohio-1284 at ¶ 20.  Given that the trial court was in the best position to view witnesses, weigh credibility and make an obviously difficult decision, we decline to find that the trial court abused its discretion or committed plain error in awarding custody to the Appellee.

## B. THE GUARDIAN AD LITEM'S REPORT

**{¶29}** Appellant argues the trial court abused its discretion with regard to the report "filed immediately before the final hearing, and for not allowing its proper consideration by the parties." Appellant also contends that the trial court committed plain error by failing to admit the report sua sponte. We disagree. The "Rules of Superintendence are designed (1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before the courts." *State v. Singer,*(1977), 50 Ohio St.2d 103, 109-110, 362 N.E.2d 1216. Courts have interpreted the Rules of Superintendence as general guidelines for the conduct of the courts that do not create substantive rights. See Id. at 110 (stating that the Rules of Superintendence are not meant "to alter basic substantive rights"); see, also, *In re K.G. Wayne* App. No. 10CA16, 2010-Ohio-4399, at ¶11; *Allen v. Allen,* Trumbull App. No. 2009-T-0070, 2010-Ohio-475, at ¶ 31; *Sultaana v. Giant Eagle,* Cuyahoga App. No. 90294, 2008-Ohio-3658, at ¶45. "They are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants." *State v. Gettys*, (1976), 49 Ohio App.2d 241,243, 360 N.E.2d 735.

{¶30} In all juvenile and domestic relations proceedings, Sup.R. 48(F) outlines the guardian ad litem's duties when preparing a final report.  The rule requires that the guardian ad litem's report be filed no less than seven days prior to the hearing, unless the time is extended by the court. Sup.R. 48(F)(1)(c).  In analyzing Appellant's argument with regard to the late receipt of the GAL's report, we initially observe that Appellant did not object to proceeding with the September 27, 2011 hearing due to the guardian's failure to comply with Sup.R. 48(F)(1)(c).

{¶31} It is well-settled that failing to object at the trial court level to a complained of error results in a waiver of that error on appeal.  See, e.g. *Goldfuss v. Davidson*, (1997),79 Ohio St.3d 116, 121, 679 N.E.2d 1099; *Gallagher v. Cleveland Browns Football Co.*, (1996),74 Ohio St. 3d 427, 436-437, 659 N.E.2d 1232.  Thus, an appellate court may recognize an error that an appellant waived only if it constitutes plain error.  See e.g. *In re Etter* (1998), 134 Ohio App.3d 484, 492, 731 N.E.2d 694. Courts should exercise extreme caution when invoking the plain error doctrine, especially in civil cases.  Courts should therefore limit applying the doctrine to cases "involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process***." *Goldfuss,* 79 Ohio St.3d at 122-123; see, also, *In re Alyssa C,* 153 Ohio App.3d 10, 2003-Ohio-2673 at ¶35,

790 N.E.2d 803; *In re Curry*, Washington App. No. 03CA51, 2004-Ohio-750, at ¶ 42 (applying plain error doctrine, overruled on other grounds).

**{¶32}** Sup.R. 48 became effective in March 2009, and, thus, there is little case law interpreting its application. *In re E.W.*, 4th Dist.Nos. 10CA18, 10CA19,10CA20, 2011-Ohio-2123, ¶14.  See *In re J.L.R.,* 4th Dist.No. 08CA17, 2009-Ohio-5812, at ¶ 50  (noting scarcity of case law interpreting Sup.R.48). As we previously explained in *In re E.W.,* at least two appellate courts have examined the rule, and both courts concluded that the guardian ad litem's failure to comply with the rule did not constitute grounds for reversal.  See *In re. K.G., supra;  Allen, supra.* In *Allen,* for example, the guardian ad litem did not attend the final day of hearings, in contravention of Sup.R. 48(D)(4), and did not make the written report available to the parties until the day before the final hearing, in violation of Sup.R. 48(F)(2).  Allen, supra at ¶ 30; see also, *In re K.G.* at ¶ 13 (determining that alleged violation of Sup.R. 48 either did not exist or that the mother could not demonstrate any prejudice resulting from the alleged violations). In *E.W.*, supra at ¶15, this Court held that Appellant did not have any substantive right to enforce under Sup.R.48. , and concluded as follows:

> "[T]he rule is a general guideline that does not have the force of statutory law.  Moreover, beyond a general assertion that she could have conducted a further examination of the guardian ad litem's report, appellant has failed to demonstrate how the guardian ad litem's failure to file the report at least seven days before the hearing caused

her any prejudice. Thus, we do not find any plain error that the trial court should have noticed." Id. at ¶15.

{¶33} In the case at bar, Appellant cites Sup.R. 48 and demonstrates that there was not compliance with the rule. Appellant urges this Court to find plain error because the GAL's report was not made available to the parties until just before the hearing. We interpret Appellant's argument that the parties "were not allowed its proper consideration" to mean that the parties being pro se se litigants, they may not have realized they should request a continuance of the hearing to review the report or to obtain counsel to review the report. With regard to pro se litigants, it is well-established that pro se litigants are held to the same rules, procedures, and standards as litigants who are represented by counsel. *Crown Asset Management, LLC, v. Gaul,* 4th Dist. No. 08CA30, 2009-Ohio-2167, ¶15, citing *Selvage v. Emnett,* 4th Dist. No. 08CA3239, 2009-Ohio-940,¶ 13. Litigants who choose to proceed pro se are presumed to know the law and correct procedure, and are held to the same standards as other litigants. *Capital One Bank, v. Rodgers,* 5th Dist. No. CT2009-0049, 2010-Ohio-4421, ¶31. A pro se litigant cannot expect or demand special treatment from the judge, who must be impartial. Id, supra, citing *Frew v. Frew,* 5th Dist. No. 2007-CA-17, 2008-Ohio-4203,¶ 11.

{¶34} We decline to find plain error occurred herein. In this case, both Appellant and Appellee were not entirely unfamiliar with the courtroom setting. Appellant had prior counsel in the instant matter until approximately two weeks

prior to the originally scheduled hearing date. Prior counsel had represented Appellant in a contempt hearing. Appellee alluded to having counsel represent him with regards to obtaining custody of his other children. At the beginning of the September 27, 2011 hearing, the trial judge noted that the parties had just received the GAL's report and that they'd be taking a ten (10) minute break to read and possibly discuss "how we're going to continue today's trial." At this point in the hearing would seem to be the logical time to object to the presentation of the report as being untimely or unfair, or to request more time to review the report or discuss with an attorney. Appellant herein failed to lodge any semblance of objection, at any point during the hearing, which could be construed as taking issue with the timeliness of the report. Appellant chose to proceed unrepresented. She discharged counsel several weeks before the hearing and she was not placed in any sort of unfair situation by her counsel declining representation at the last minute. Appellant is held to the strategic decisions she made throughout the hearing.

{¶35} Finally, Appellant argues that the trial court should have admitted the report *sua sponte*. We find no error in this regard. The report was filed with the court on the same date and was part of the record which the court reviewed in arriving at its decision, regardless of the lack of any request to file it as an exhibit.

{¶36} The GAL was able to testify that her recommendation was for legal custody to the Appellant. Presumably this is exactly Appellant wanted to

emphasize. The GAL's report was part of the lower court's record by virtue of its filing on September 27, 2011, and did become part of the trial court's consideration upon review of the record. As in *In re E.W.* supra, Appellant fails to demonstrate how the trial court's failure to admit the report as an exhibit, sua sponte, caused her any prejudice.  Therefore, we decline to find any abuse of discretion by the trial court or any plain error below.  Having found Appellant's sole assignment of error without merit, we overrule it.  Accordingly, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED**.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court Juvenile Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J. and Kline, J.: Concur in Judgment and Opinion.

For the Court,


BY: _____
Matthew W. McFarland, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**