[Cite as *Roy v. Durrani*, 2015-Ohio-11.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JEFF ROY, | : | APPEAL NO. C-140181 |
| | | TRIAL NO. A-1108652 |
| DEBBIE ROY, | : | |
| | | *O P I N I O N.* |
| and | : | |
| JOSHUA ROY, | : | |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| ABUBAKAR ATIQ DURRANI, M.D., | : | |
| and | : | |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : | |
| | : | |
| Defendants-Appellees, | : | |
| and | : | |
| CINCINNATI CHILDREN'S HOSPITAL MEDICAL CENTER, | : | |
| Defendant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  January 7, 2015

*Stephanie Collins* and *K. Joshua Waters*, for Plaintiffs-Appellants,

*Lindhorst & Dreidame, Michael F. Lyon, James F. Brockman* and *Bradley McPeek,* for Defendants-Appellees,

*Dinsmore & Shohl LLP, J. David Brittingham* and *Thomas P. Kemp, Jr.*, for Defendant Cincinnati Children's Hospital Medical Center.

**Please note: this case has been removed from the accelerated calendar.**

Per Curiam.

{¶1}  Plaintiffs-appellants Jeff, Debbie, and Joshua Roy ("the Roys") have appealed from the trial court's grant of summary judgment to defendants-appellees Abubakar Atiq Durrani, M.D., and Center for Advanced Spine Technologies, Inc., ("CAST") in this medical-malpractice action.  Because the Roys had released all claims against Dr. Durrani in a settlement agreement reached with defendant Cincinnati Children's Hospital Medical Center ("CHMC"), and because no genuine issues of material fact exist with respect to the Roys' claims against CAST, we affirm the trial court's grant of summary judgment to Dr. Durrani and CAST.

### *Factual and Procedural Background*

{¶2}  Joshua Roy was diagnosed shortly after birth with agenesis of the corpus collosum, a brain disorder.  This condition caused Joshua to suffer numerous physical disabilities, including curvature of his spine.  Joshua was referred to CHMC in April of 2007 for treatment of his spinal curvature, and he was treated by Dr. Durrani, who was an employee of CHMC at that time.  Dr. Durrani diagnosed Joshua with kyphosis and recommended that Joshua's curving spine be treated with a brace. The brace was not able to correct the spinal curvature and it diminished Joshua's quality of life.  Because the brace had been unsuccessful, Dr. Durrani performed surgery on Joshua in November of 2008 to fix the curvature of his spine.  The surgery involved insertion of a metal growth rod in Joshua's back.  Joshua suffered extensively following the surgery.  His parents noticed extreme protrusions along his spine and felt that the rod was impairing his physical abilities.

{¶3}   The Roys had one follow-up visit with Dr. Durrani at CHMC. During that visit, Dr. Durrani assured the Roys that the protrusions were caused by normal post-surgery swelling. Dr. Durrani left his employment with CHMC in January of 2009, and shortly thereafter opened CAST. Joshua saw Dr. Durrani for one visit at CAST in April of 2009. Joshua still had protrusions on his back at that time. Dr. Durrani allegedly conveyed that a complication had occurred with the growth rods and that they were "rolling." But he felt that it was not necessary to perform surgery to fix the rods. On the advice of Joshua's pediatrician, who was concerned about the protrusions in Joshua's spine, the Roys sought a second opinion with Dr. Steve Agabegi. Dr. Agabegi informed the Roys that several screws were coming out of Joshua's spine, and he performed surgery to remove the rods in October of 2009. According to Dr. Agabegi, the surgery that Dr. Durrani had performed on Joshua was designed for a person suffering from scoliosis, not kyphosis.

{¶4}   The Roys filed a medical-malpractice complaint against Dr. Durrani, CAST, and CHMC, raising claims related to Joshua's surgery and treatment. They entered into a confidential settlement agreement with CHMC in December of 2012 and, on January 31, 2013, filed an entry that dismissed CHMC from the action with prejudice. After the settlement was reached, Dr. Durrani and CAST filed a motion to compel production of the settlement agreement. The trial court granted the motion and ordered the settlement agreement to be filed under seal.

{¶5}   After reviewing the settlement agreement, Dr. Durrani and CAST moved for summary judgment. They argued that the plain language of the settlement agreement, which released all claims against CHMC and defined CHMC to include its employees, had also released all claims against Dr. Durrani because he

had been an employee of CHMC at the time that he had performed surgery on Joshua. With respect to CAST, the motion for summary judgment argued that no claims asserted against CAST would survive following Dr. Durrani's release. The trial court found the motion to be well-taken and awarded summary judgment to Dr. Durrani and CAST.

### Summary Judgment Standard of Review

{¶6} The Roys have appealed from the trial court's entry granting summary judgment to Dr. Durrani and CAST. In one assignment of error, they argue that the trial court's grant of summary judgment was in error.

{¶7} We review a trial court's grant of summary judgment de novo. *See Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriately granted when there exist no genuine issues of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party. *See State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

### Settlement Agreement

{¶8} The Roys first argue that the language of the settlement agreement reached with CHMC did not also release Dr. Durrani and CAST from liability.

{¶9} The settlement agreement clearly identified the parties to whom it applied. It provided that the settlement agreement was being entered into by the Roys, collectively referred to as "PLAINTIFFS," and

CINCINNATI CHILDREN'S HOSPITAL MEDICAL CENTER, including its predecessors, successors, members, affiliates, officers, directors, agents, consultants, servants, representatives, underwriters, distributors, attorneys, employees, insurers, reinsurers, assigns and each of them (collectively "DEFENDANTS").

{¶10} The agreement stated in pertinent part that:

In consideration of the payment by DEFENDANTS to PLAINTIFFS of * * * PLAINTIFFS hereby fully and completely settle, release, remise, quitclaim, acquit, forever discharge and hold DEFENDANTS harmless from any and all past, present and future claims * * * incurred or to be incurred, related to any and all matters arising out of or in any way connected to the facts as set out in the case captioned <u>Jeff, Debbie and Joshua Roy v. Abubakar Atiq Durrani, M.D., et al.</u>, Court of Common Pleas, Hamilton County, Ohio, Case No. A1108652. * * * PLAINTIFFS hereby fully and completely covenant that they will not bring, commence, prosecute, or cause or permit to be brought, commenced, or prosecuted, either directly or indirectly, any suit or action against DEFENDANTS related to DEFENDANTS' care and treatment of JOSHUA ROY before the execution of this release * * *.

{¶11} The Roys contend that the plain language of this agreement did not expressly bar bringing claims against all other individual defendants, and that the parties had only intended to release CHMC from liability. We considered this exact argument in *Wilson v. Durrani*, 1st Dist. Hamilton No. C-130234, 2014-Ohio-1023. *Wilson* involved a different medical-malpractice action that had been filed against

6

Dr. Durrani, CAST, and CHMC, and it followed a similar procedural posture to the case at hand. *See id.* at ¶ 3-8. The plaintiff in *Wilson* had also entered into a confidential settlement agreement with CHMC. After the trial court ordered the settlement agreement to be produced, Dr. Durrani and CAST moved for summary judgment on the basis that the settlement agreement had also released all claims against Dr. Durrani and that no independent claims against CAST existed. *Id.* The trial court granted the motion for summary judgment, and its decision was affirmed by this court on appeal. We held in *Wilson* that "the plain language of the settlement agreement released Wilson's claims against Dr. Durrani and therefore his vicarious-liability claim against CAST." *Id.* at ¶ 15.

{¶12} As in this case, the settlement agreement in *Wilson* clearly defined the parties to the agreement. It provided that the defendants being released were CHMC, including, among other entities, its employees. *Id.* at ¶ 14. Based on the clear and unambiguous language of the settlement agreement in this case, and relying on the precedent set in *Wilson*, we determine that the settlement agreement released the Roys' claims against Dr. Durrani, who was an employee of CHMC at the time that he performed surgery on Joshua. The trial court properly granted summary judgment to Dr. Durrani on all of the Roys' claims.

{¶13} The Roys' claims against CAST were not similarly released by the settlement agreement, but we nonetheless hold that the trial court's grant of summary judgment to CAST was proper. The Roys failed to come forth with any evidence in response to the motion for summary judgment that created a genuine issue of material fact on any claims against CAST. *See id.* at ¶ 17. In the absence of a genuine issue of material fact, CAST was entitled to summary judgment.

### *Evidentiary Hearing Not Required*

{¶14} The Roys next argue that the trial court should have held an evidentiary hearing to determine whether there was a binding settlement agreement. They contend that the trial court should have considered parol evidence to prove that there had been no meeting of the minds between the parties and to determine the parties' intent. We are not persuaded.

{¶15} We stated in *Wilson* that "[b]ecause the settlement agreement is unambiguous on its face, we need not resort to parol evidence * * * to uncover the signatories' intent." *Wilson,* 1st Dist. Hamilton No. C-130234, 2014-Ohio-1023, at ¶ 16. The settlement agreement executed between the Roys and CHMC was clear and unambiguous on its face. Because the contract was unambiguous, its express language releasing Dr. Durrani from liability controlled and parol evidence was inadmissible to prove a contrary intention. *See Consolo v. Menter*, 9th Dist. Summit No. 25394, 2011-Ohio-6241, ¶ 19, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). The trial court did not err in failing to conduct an evidentiary hearing concerning the settlement agreement.

### *No Mistake of Fact*

{¶16} The Roys next argue that the settlement agreement should be rescinded because either a unilateral or a mutual mistake of fact occurred in the formation of the contract. But this court, when reviewing the trial court's ruling on the motion for summary judgment, cannot rescind the settlement agreement as a remedy. The only remedy that this court could grant would be to vacate the trial court's grant of summary judgment if we found that a genuine issue of material fact

existed regarding whether a mistake of fact had occurred in the formation of the settlement agreement.

{¶17} In certain circumstances, a contract may be voidable when one of the parties to the contract makes a mistake. The Restatement of the Law on contracts provides that:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake.

1 Restatement of the Law 2d, Contracts, Section 153 (1981).

{¶18} The Roys contend that a unilateral mistake occurred in the formation of the contract because it was their intent and understanding that the settlement agreement would not release Dr. Durrani in his individual capacity. They do not take issue with the actual language used in the settlement agreement. Rather, they challenge the legal interpretation of those words as inconsistent with the parties' true intentions.

{¶19} The Fourth Appellate District considered a similar argument in *Selvage v. Emnett*, 181 Ohio App.3d 371, 2009-Ohio-940, 909 N.E.2d 143 (4th Dist.). In that case, appellant Selvage had purchased a parcel of land from Howard and Penny Emnett. Selvage filed a complaint against the Emnetts and several other

defendants alleging that their actions had breached his warranty of title, had disrupted the quiet enjoyment of his property, and had diminished the value of his land. *Id.* at ¶ 3-4. Selvage entered into an oral settlement agreement in which he agreed to dismiss his action in return for various considerations. *Id.* at ¶ 5. Selvage later attempted to prevent the trial court from enforcing that settlement agreement by asserting that a unilateral mistake had occurred because he did not understand that the agreement included the dismissal of his claims against all defendants and not solely the Emnetts. *Id.* at ¶ 14. In rejecting his argument, the Fourth District stated that

> Appellant's alleged unilateral mistake was that he purportedly did not understand that 'this action' meant the entire case, not just his claims against appellees. This 'mistake' is not sufficient to rescind the contract, however. We find no evidence that either appellees or McDermott 'had reason to know of the mistake or [that their] fault caused the mistake.' Moreover, appellant's ignorance of the meaning of 'this action' does not constitute a sufficient mistake.

(Internal quotations omitted.) *Id.* at ¶ 15.

{¶20} We likewise determine that the Roys' alleged unilateral mistake that they did not understand that all claims were released against Dr. Durrani in his individual capacity was not a sufficient mistake to create a genuine issue of material fact as to whether the settlement agreement was voidable. The language used in the settlement agreement was unambiguous and clearly released all claims against Dr. Durrani. The settlement agreement contained a clause stating that "PLAINTIFFS agree that they have read this AGREEMENT carefully; that they know and

10

understand its contents and its legal binding effect." A careful reading of the settlement agreement conveys that all claims were being released against Dr. Durrani, an employee of CHMC. The Roys' lack of knowledge about the effect of the words that had been used in the settlement agreement, with their approval, cannot constitute a sufficient mistake to rescind the settlement agreement. Further, the Roys were represented by experienced counsel throughout the settlement process, and the release itself contains cautionary language in bold type directly above the signature lines advising all parties to read the agreement carefully before signing. The Roys' argument concerning a unilateral mistake additionally fails because the record contains no evidence that CHMC, the other party to the settlement agreement, had reason to know of the mistake.

{¶21} We further determine that the record contains no evidence to create a genuine issue of material fact as to whether a mutual mistake of fact occurred in the formation of the contract. The Restatement of the Law on Contracts provides that a mistake by both parties at the time that a contract was made may make a contract voidable in certain circumstances. *See* 1 Restatement of the Law 2d, Contracts, Section 152 (1981). But the record here contains no evidence that any mistake was mutual or that CHMC made a mistake when entering into the settlement agreement.

### Wisconsin Law

{¶22} The Roys last argue that this court should apply Wisconsin law to determine whether the trial court should have conducted an evidentiary hearing and whether a mistake of fact occurred in the formation of the contract. They contend that Wisconsin law is applicable because a Wisconsin court approved the settlement agreement reached by the Roys and CHMC. But the plain language of the settlement

agreement belies the Roys' argument. Paragraph nine of the settlement agreement provides that "[i]t is further understood and agreed that this AGREEMENT shall be subject to and governed by the laws of the State of Ohio * * *."

{¶23} The parties agreed prior to executing the settlement agreement that Ohio law would govern any disputes arising from the agreement. Citing Restatement of the Law 2d, Conflict of Laws, Section 187 (1971), the Ohio Supreme Court has held that such choice of law provisions should be respected unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Schulke Radio Prod., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 438-439, 453 N.E.2d 683 (1983).

{¶24} Neither of the above exceptions are present in this case, and the parties' choice of law specified in the settlement agreement governs any arising disputes.

### Conclusion

{¶25} Because the settlement agreement released all claims against Dr. Durrani in his individual capacity, the trial court's grant of summary judgment to Dr. Durrani was not in error. And the trial court's grant of summary judgment to CAST

was proper because the Roys presented no evidence to create a genuine issue of material fact on any claims against CAST. The Roys' assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**HILDEBRANDT, P.J., HENDON** and **FISCHER, JJ.**

Please note:

The court has recorded its own entry on the date of the release of this opinion.