[Cite as *Gould v. Gould*, 2017-Ohio-6896.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

ROBERT L. GOULD,                         :

                                         :        Case No. 16CA30

    Plaintiff-Appellee,              :

                                         :

    vs.                              :        DECISION AND JUDGMENT
                                         :        ENTRY

MELISSA GOULD, now KELLOGG,               :

                                         :

    Defendant-Appellant.             :        **Released: 07/12/17**

_____

APPEARANCES:

Melissa Kellogg, Pro Se Appellant.

Robert C. Delawder, Ironton, Ohio, for Appellee.

_____

McFarland, J.

    **{¶1}** Appellant Melissa Gould, n.k.a. Kellogg, appeals the December 2, 2016 judgment entry of the Lawrence County Common Pleas Court, which approved the Magistrate's Decision dated September 23, 2016. Based on the trial court's independent evaluation of the evidence and consideration of the R.C. 3109.04 (F)(1) factors, the trial court found that it was in the best interests of the parties' minor children that Appellee Robert I. Gould, the children's father, be designated the residential parent.

Upon review of the record, we find the award of custody in this matter is supported by a substantial amount of credible and competent evidence. Accordingly, the assignments of error are without merit, and are hereby overruled. The judgment of the trial court is affirmed.

## FACTS

{¶2} Appellant and Appellee were married in 2010. Appellee filed a complaint for divorce in the Lawrence County Court of Common Pleas on December 13, 2012. The parties have two sons, A.G., age 7, and J.G., age 5, at present. Appellee also filed an ex parte motion for shared parenting during the pendency of the divorce action.

{¶3} The trial court granted a temporary order for shared parenting, specifying that the parties make exchanges of the children at the Lawrence County Sheriff's Department. On December 28, 2012, Appellant filed an answer and counterclaim, alleging that Appellee had been physically and mentally abusive, and requesting the court name her the residential parent. Appellant also filed a motion for rehearing on the ex parte motion for shared parenting.

{¶4} On January 2, 2013, the magistrate heard argument and testimony as to the ex parte shared parenting plan and ordered that the plan be dissolved and that Appellant be named the temporary residential custodial parent of the minor children. Another hearing was conducted on January 30, 2013, at which time the

magistrate made temporary orders regarding child support and other issues relating to the minor children. A final hearing occurred on June 12, 2013. However, on November 25, 2013, the trial court issued an order that the complaint be dismissed without prejudice for lack of prosecution.

{¶5} On December 4, 2013, Appellee filed a motion to reinstate the divorce action, which the trial court granted.[1] On December 6, 2013, the magistrate granted the complaint for divorce. The final appealable order of that date addressed issues of the parties' property, debts, custody, visitation, child support, income tax filings, and health insurance of the minor children.

{¶6} On April 10, 2015, Appellee filed a motion for a change of custody and termination of the child support obligation, alleging that since the divorce in December 2013, the children had been in his custody and care most of the time, and that he saw to their day-to-day needs. On April 20, 2015, Appellant filed a motion for an order modifying the child support. However, after the matters came on for hearing, both parties agreed to withdraw their respective motions. The trial court ordered that if either party should intend to relocate outside of the immediate tri-state area,[2] they must give the other party and the Court at least a 30-day notice in order to give the other party time to file a motion to determine appropriate parenting time.

---

[1] The court's entry indicated the case was reinstated upon Appellee's payment of $230.00 in court costs which had been outstanding for several months.

[2] In this case, the immediate tri-state area is generally understood to be Ohio, Kentucky, and West Virginia.

**{¶7}** In August 2015, Appellee filed a motion for an order granting him a temporary change of custody and emergency temporary custody of the children. Appellee again alleged since the final divorce decree in 2013, the children had been in his custody and care more than half of the time. He further alleged that on a number of occasions, issues arose due to Appellant's threatening to move the children out of the area or to interfere with his parenting time. When the motion was filed Appellee alleged that Appellant had already moved the minor children to Alabama without notifying him or receiving permission of the court. He requested an authorization from the court to allow local law enforcement to assist him in retrieving the children if necessary. On August 6, 2015, the magistrate granted the motion and further found that Appellant had absconded with the children in direct violation of the court's previous order. The magistrate further ordered that law enforcement was authorized to assist Appellee in retrieving the children if necessary.

**{¶8}** On September 3, 2015, however, the magistrate, after hearing testimony of the parties, set aside the temporary order, based on the representation that Appellant had moved back to Lawrence County. Appellant was further ordered not to remove the children from the tri-state area without prior court approval. Appellee's motion for custody was scheduled for an evidentiary hearing.

**{¶9}** On July 29, 2016, the magistrate ordered that Appellee was permitted to enroll the minor children in Boyd County, Kentucky, schools. The matter was scheduled for trial on August 22, 2016. On September 13, 2016, the magistrate's decision found, based upon the testimony of witnesses, exhibits, and arguments of counsel, that Appellant spent the majority of her time in Auburn, Alabama, and further found that fact constituted a change in circumstances pursuant to R.C. 3109.04(E)(1)(a). The magistrate recommended that Appellee be designated the residential parent of both minor children and that Appellant was entitled to Rule 53 visitation.

**{¶10}** On September 23, 2016, Appellant filed objections to the magistrate's report. Appellant alleged the magistrate's decision recommending a change of custody was contrary to the overwhelming evidence and contrary to R.C. 3109.04(E) and (F). Appellee filed a response to Appellant's objections to the magistrate's decision. However, on December 2, 2016, the trial court issued its judgment entry which approved the magistrate's decision and found the evidence indicated a change in circumstances which would cause the trial court to believe it is in the best interests of the minor children that Appellee be designated the residential parent.[3] This timely appeal followed.

---

[3] The trial court found Appellant was entitled to Rule 53 visitation with certain modifications specified in the court's entry at pages 4-5.

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO TAKE INTO CONSIDERATION THE APPELLANT BEING THE MINOR CHILDREN'S PRIMARY CARETAKER FOR THEIR ENTIRE LIFE.

II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEE ROBERT GOULD.

III. THE COURT'S APPLICATION OF THE RELEVANT FACTS TO THE REMAINING FACTORS IF CONSIDERED OR MENTION AT ALL UNDER THE BEST INTEREST STANDARD ENUMERATED IN R.C. O.R.C. SEC. 3109.04(A)(B)(C)(D)(E)(F)(G)(H)(I)(J), WAS IN ERROR.

IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN THE MAGISTRATE MADE BIAS (SIC) AND PREJUDICE (SIC) REMARKS DURING TESTIMONY OF APPELLANT MELISSA KELLOGG.  ALSO, THE MAGISTRATE OVERSTEPPED HIS AUTHORITY IN INTERROGATING APPELLANT MELISSA KELLOGG IN REGARDS TO HER EMPLOYMENT WITH ECOT."

A.  STANDARD OF REVIEW

{¶11}  We apply the same standard to a trial court's decision to award a party legal custody of a child that we apply to all child custody disputes-that is, we afford the utmost deference to a trial court's child custody decision. *See In re E.W.*, 4th Dist. Washington Nos. 10CA18, 10CA19, 10CA20, 2011-Ohio-2123, ¶ 18, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Consequently, absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding child custody matters. *See, e.g., Bechtol v. Bechtol*,

49 Ohio St.3d 21, 550 N.E.2d 178, (1990), syllabus. Thus, when "an award of

custody is being supported by a substantial amount of credible and competent

evidence, such an award will not be reversed as being against the weight of the

evidence by a reviewing court." *Bechtol* at syllabus; *see also Davis v. Flickinger*,

77 Ohio St.3d 415, 418, 674 N.E.2d 1159, (1997).

{¶12} In *Davis*, the court explained the abuse of discretion standard that

applies in custody proceedings:

> "Where an award of custody is supported by a substantial
> amount of credible and competent evidence, such an award will not
> be reversed as being against the weight of the evidence by a
> reviewing court. (*Trickey v. Trickey*, [1952]158 Ohio St. 9, 470
> O.O.481, 106 N.E.2d 772, approved and followed.)
> The reason for this standard of review is that the trial judge
> has the best opportunity to view the demeanor, attitude, and
> credibility of each witness, something that does not translate well on
> the written page. As we stated in *Seasons Coal Co. v. Cleveland*,
> (1984), 10 Ohio St.3d 77, 80-81, 461 N.E.2d 1273, 1276-1277:
> The underlying rationale of giving deference to the findings of
> the trial court rests with the knowledge that the trial judge is best
> able to view the witnesses and observe their demeanor, gestures and
> voice inflections, and use these observations in weighing the
> credibility of the proffered testimony.* * *
> * * *A reviewing court should not reverse a decision simply
> because it holds a different opinion concerning the credibility of the
> witnesses and evidence submitted before the trial court. A finding of
> an error in law is a legitimate ground for reversal, but a difference of
> opinion on credibility of witnesses and evidence is not. The
> determination of credibility of testimony and evidence must not be
> encroached upon by a reviewing tribunal, especially to the extent
> where the appellate court relies on unchallenged, excluded evidence
> in order to justify its reversal. This is even more crucial in a child
> custody case, where there may be much evident in the parties'
> demeanor and attitude that does not translate to the record well."

*Id.* at 418-419.

Thus, reviewing courts should afford great deference to trial court custody

decisions. *Pater v. Pater* (1997) 63 Ohio St.3d 393, 396, 588 N.E.2d 794.

B.  LEGAL ANALYSIS

{¶13}  In Appellant's first three assignments of error, she asserts that in

awarding custody to Appellee, the trial court: (1) failed to consider that she was

their young sons' primary caretaker; (2) erred in granting summary judgment to

Appellee; and, (3) erroneously applied the statutory factors for granting legal

custody.  Because these assignments of error challenge the trial court's entry which

granted custody of the minor children to Appellee, we consider them jointly.  For

further ease of analysis, we begin by considering the third assignment of error.

Our consideration herein necessitates a review of the legal custody standard and

the statutory factors set forth in R.C. 3109.04(F).

1. Legal Custody Standard

{¶14}  In determining which of two parents would better meet a child's best

interests, a trial court must follow R.C. 3109.04.  Under the "best interests of the

child" standard of R.C. 3109.04(E), R.C. 3109.04(F)(1) requires a trial court to

consider all relevant factors, including, but not limited to:

(a)  The wishes of the child's parents regarding the child's care;

(b)  If the court has interviewed the child in chambers pursuant to
division (B) of this section regarding the child's wishes and concerns

as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c)  The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d)  The child's adjustment to the child's home, school, and community;

(e)  The mental and physical health of all persons involved in the situation;

(f)  The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g)  Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)  Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abuse or neglectful act that is the basis for the adjudication; whether either parent or any member of the household of either parent previously has been convicted or of pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and

whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused or neglected child;

(i)  Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)  Whether either parent has established a residence, or is planning to establish a residence, outside this state.

2. The Trial Court's Analysis and Application of the Statutory Factors

{¶15}  Appellant generally contends the trial court failed to properly consider and apply R.C. 3109.04(F)(1) factors (c),(e),(f),(g),(h),(i), and (j). Specifically, she asserts that pursuant to R.C. 3109.04(a), the children's wishes were never considered and "no allocation to the question asked/answered regarding the child's wishes and concerns were displayed."  She also asserts that pursuant to R.C. 3109.04(F)(1)(d), the children's adjustment to their home, school, and community was not considered.  Appellant emphasizes that the children have resided with her since birth and, despite returning to the court on various issues, the court had never felt a change of custody was in the best interests of the children.  Appellant argues her sons' emotional ties are with her and she is best suited to provide for their needs.  She further emphasizes her young sons have established home, school and community ties in Lawrence County.  For the reasons which will follow, we disagree.  We are not convinced that in ascertaining

what would be in the best interests of the parties' minor sons the trial court failed to properly consider all the factors enumerated in R.C. 3109.04(F).

{¶16}  However, before proceeding to our review of the trial court's best interest consideration analysis and application of the statutory factors, we pause to point out the record before us does not include Exhibits 1-7 introduced by Appellee's counsel at trial.[4]  Nevertheless, our individual review of the parties' and witnesses' testimony demonstrates there is substantial credible and competent evidence in the record, without admission of these exhibits, to establish the facts and evidence upon which the magistrate relied.  The transcript reveals that while Appellee's counsel moved to introduce the exhibits at the close of Appellee's direct testimony, Appellant's counsel objected to their admission until he had completed cross-examination.  The transcript further reflects that at no time did Appellee's counsel again move to admit the exhibits, nor does it reflect that the trial court sua sponte admitted the exhibits.[5]  As such, we do not specifically

---

[4] Testimony indicated as follows: Exhibit 1 was a series of Facebook photographs of Appellant's house in Auburn, Alabama, and Facebook conversations about her home, guests and a "selfie" taken in the bathroom of the home; Exhibit 2 was another series of Facebook posts by Appellant; Exhibit 3 was not identified; Exhibit 4 was a series of Facebook posts during the month of March 2016; Exhibit 5 was a series of Facebook posts prior to the parties' court date in July 2016; Exhibit 6 was a text conversation between Appellee and Appellant in which Appellee advised Appellant about the older son's school drop-off times and location and Appellant responded, despite the court's approval of enrollment, with threats to notify Kentucky education officials and have them initiate a lawsuit; and, Exhibit 7 was a report from the children's pediatrician, Dr. Ford, in 2015, which indicated Appellant intended to relocate the children to Alabama.

[5] At the end of the hearing before the magistrate, the magistrate advised he would hold the case open for seven days in order to allow the parties to supplement the record separately or jointly with information from the Ohio Department of Education as to the ability to move the E.C.O.T. machine.  There is nothing in the record to indicate the exhibits were admitted into evidence during this time frame.

consider the exhibits themselves but, presuming the regularity of the trial court proceedings, rely upon the testimony related about them in the transcript.[6]

{¶17}  The crux of the argument supporting Appellee's motion for custody filed on August 2015 was that since the 2013 divorce which granted Appellant full custody, the parties' young sons had been in Appellee's custody and care more than half of the time, and that Appellant spent a majority of her time in the State of Alabama.  At the magistrate's hearing on August 22, 2016, Appellee testified and presented testimony from his current wife Karen Gould.  Appellant testified and presented testimony of her mother Debbie Wikoff, her friend Larry Bennett, and her daughter.

{¶18}  Appellee is an assistant operator at A.K. Steel.  He works shift work. Appellee testified he resides in Catlettsburg, Kentucky (Boyd County), with Karen Gould and her two sons, and Appellee's minor sons who are enrolled in school in Boyd County.[7]  A.G. and J.G. shared a room.  At the time of the hearing, A.G. appeared to be doing extremely well in school and J.G. had not yet begun preschool.  Appellee testified he was not trying to keep the boys from their mother or grandmother, but thought he could offer more stability.

---

[6] "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *State v. Kempton,* 4th Dist. Ross No. 15CA3489, 2016-Ohio-1183, ¶ 9, quoting *Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). Moreover, "[t]he duty to provide a transcript for appellate review falls upon the appellant.  This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." *Id.*
[7] Appellee's daughter is also a resident of his household, but is away at college.

{¶19} Appellee related the chronology of the proceedings and testified as of the hearing date, he understood Appellant to be living in Alabama. Appellee testified he had seen pictures on Facebook showing Appellant's home in Alabama in September 2015, and based on the posts he had seen, she had been living in Alabama during the 2015-2016 school year and had never moved back permanently.

{¶20} Appellee further testified he had only seen Appellant 3 times during custody exchanges and he believed that during Appellant's parenting times, the children were actually with her mother in Lawrence County. He testified Facebook posts in February, March, April, May, June, and July 2016 indicated to him that Appellant resided in Alabama in the same home. He testified the Facebook posts stopped after a previous court date in July 2016.

{¶21} On cross-examination, Appellee admitted he had been married three times. He disagreed that his work schedule was erratic. He admitted the Facebook posts were the only evidence, besides their young sons' statements to him, that Appellant lived in Alabama. He testified the previous year, Appellant had already taken the boys to Alabama when she told him they were moving there and when he had to get a court order to retrieve them, in violation of the 30-day notice requirement. On redirect, Appellee testified if he was working a swing shift, his wife or someone else was always available to care for the boys.

{¶22} Karen Gould testified she had been present for the child exchanges during the past year and had only seen Appellant 2-3 times. Each week there are 2 exchanges. She also opined that the children spent most of the parenting time with Appellant's mother, Debbie Wikoff. Karen testified she works 9-5 in a doctor's office. If she is not available to transport the boys, she makes arrangements for them.

{¶23} Debbie Wikoff, Appellant's mother, testified Appellant resides in Lawrence County with Appellant and her young sons. Ms. Wikoff is a second-grade teacher. She testified the older son did well in school academically, but had some behavior problems. Ms. Wikoff testified Appellant had lived with her since August 2015. At times, Appellant takes long weekend trips to Alabama. Appellant's two older children live in Alabama.

{¶24} Ms. Wikoff testified Appellant is an online school teacher and works out of Ms. Wikoff's home in Lawrence County. Appellant's work schedule is Monday through Friday. Appellant also attends teacher's meetings in Columbus, Ohio, and does local testing of students. She estimated Appellant was in Ohio 95% of the time. She also testified Appellant was reluctant to participate in the child exchanges because at one time, Appellant had a restraining order against Appellee.

{¶25} On cross-examination, Ms. Wikoff testified even though Appellant is in Ohio 95% of the time, she has constant communication with her older children via email, phone, text, and teachers. She did not know if Appellant is able to teach online from her home in Alabama.

{¶26} On redirect, Ms. Wikoff testified she had knee replacement surgery and was off work in January, February, and March, 2016. During that time, Appellant stayed there and cared for her in Lawrence County. On recross, counsel confronted Ms. Wikoff with Facebook posts indicating Appellant had been in Alabama or Georgia during March 2016. She maintained that Appellant was not in Alabama during that month. When she was again redirected, Ms. Wikoff testified that during spring break of March 2016, she, Appellant, and the older kids went to the beach.

{¶27} Appellant's friend, Larry Bennett, testified he met Appellant in 2007 through friends. Recently, he had been staying at her home in Alabama, but he returns to his farm in West Virginia when Appellant is in Alabama. His purpose for staying in Alabama is to supervise the children, and to transport them to school and extra-curricular activities when Appellant is away. He referenced himself as their "guardian." Mr. Bennett testified he began helping Appellant 2 years ago. Appellant pays all housing and utility bills.

{¶28} Specifically, Mr. Bennett testified Appellant did not live in Alabama. She was there during long school breaks or long weekends when the younger boys were with Appellee. He estimated she had been there 12 times in the previous year.

{¶29} On cross-examination, Mr. Bennett testified he is a disabled veteran. He testified Appellant saw her older children once a month and the rest of the time she leaves them in his care in Alabama.

{¶30} Appellant's 13-year-old daughter testified she lives in and attends school in Alabama and since her mother had moved back to Ohio in the previous year, she visited them in Alabama three times a month. Mr. Bennett started living with them after Appellee retrieved the younger boys from Alabama. She testified she and her brother did not move back with their mother to Ohio because they liked Alabama better. She is doing better in school and she plays basketball. Her brother is in 11th grade and plays football.

{¶31} She further testified she did not currently have a Facebook account. She uses her mother's account and posts photographs approximately 4 times a week. Her mother also posts to the account. She testified she did not go on the beach trip the last week of March 2016.

{¶32} Appellant has a teaching certificate and bachelor's degree. She completed her master's degree online through the University of Alabama and that

is how she became interested in Alabama.  She is working on her doctorate in clinical psychology.  If she could complete her doctorate at the University of Alabama, the Army would pay 75 to 80% of the cost.  She would have to commit to 5 years in the army and there is an army hospital near Auburn.  Presently, she is not enrolled in the doctorate program because rather than lose custody of the younger boys, she moved back to Ohio.

{¶33}  Appellant testified she resides in Lawrence County, Ohio, with her mother and her two younger sons.  She spent the vast majority of her time in Ohio during the 2015-2016 school year.  She testified she moved to her mother's address after a previous court hearing in August 2015, where she represented she would stay in Ohio for the sake of the boys.  She has an Ohio driver's license.  She voted in the May 2016 Ohio primaries.  She is employed by E.C.O.T[8] as a fifth grade teacher. Appellant helps her mother with expenses and pays rent in Auburn, Alabama.

{¶34}  Appellant testified her goal was to relocate all the children to Alabama.  However, after the younger two boys returned to Ohio, she decided to leave the older children in Alabama.  She summarized that the educational opportunities for her children were better there.[9]  Other than breaks and when

---

[8] Electronic Classroom of Tomorrow.
[9] Her son, a junior, is ranked 24 out of 2200 students in his school.  He plays football and has worked with a football trainer in Alabama.  Her son wants to become a petroleum engineer and there is a pilot program for him while he is

Appellee has the boys for a long weekend or some special event, Appellant makes quick trips to Alabama. Appellant testified she taught from the Lawrence County location every day during the 2015-2016 school year. During the time period in question, she spent approximately 5 days a month in Alabama and 25 in Ohio. Appellant testified in April and May 2016, she was in Lawrence County almost daily dealing with a sewer line problems.

{¶35} Appellant specifically testified she has to physically be at her computer each day and she could not take the computer from location to location in order to teach. She cannot just "take up and go anywhere." Her work computer is connected to a Cisco router and has a security feature. She cannot remove it to Alabama. She is responsible only for Ohio students. Her licensure covers only the state of Ohio.

{¶36} Appellant further testified she is responsible for state testing in other Ohio towns such as Portsmouth, Proctorville, or Chesapeake. She has to test a week at a time in those locations. She has to drive to Columbus to pick up the tests. She also has to drive to students' houses who don't show up for centralized testing.

{¶37} Appellant testified she posts on Facebook to keep her older children's family and friends apprised as to the events in her children's lives. Appellant

---

still in high school. Her daughter's grades and social interaction improved in Alabama. Appellant testified if necessary, she drives 10 hours to attend her daughter's band concert or her son's games.

testified that the Facebook post dated September 6, 2015, showing the pictures of her home in Alabama was not posted by her. She testified her spring break in 2015 was back to back with the younger boys' break, and she was in Alabama during that time. The younger boys went to the beach with her during that time. She also testified that various posts and pictures at issue had been posted by her daughter, or posted by Appellant but not at the time the picture was taken or not at the location stated.[10]

{¶38} Appellant admitted she was relying on her memory when questioned about which posts she made and which she did not. Approximately 4 other people have access to her account. Sometimes, her phone gets so full she tells her daughter to post some pictures so she could delete them from the phone but still have them.

{¶39} Initially, we note the trial judge stated in the judgment entry as follows:

> "This case was tried before the Court's Magistrate on Plaintiff's motion to be designated as residential parent of * * * and * * *. At the conclusion of the hearing, the Magistrate found in favor of the Plaintiff, and the Defendant's single objection goes to that Magistrate's Decision. This Court has reviewed the 250 page transcript of the hearings involved in this matter. * * * This Court, making its own independent evaluation of the evidence, and the weight of the same, does not place great significance upon the

---

[10] On cross-examination, her daughter testified she did not go to bars, she did not drink alcohol, she did not take her brother to get his driver's license and she did not post pictures of her mother cutting the grass. She testified she might post one or two pictures "here or there" of her mom, but she did not constantly post pictures.

location of the E.C.O.T. equipment, even though it's alleged it might be used in the State of Alabama rather than in the State of Ohio. * * * All of these factors do indicate a change in circumstances and would cause the Court to believe that it is in the best interests of * * * and * * * that their father (Plaintiff) be designated as their residential parent. In making this best interest finding, the Court has reviewed R.C. 3109.04(F)(1), which sets forth the best interest factors to be considered in regard to these two children. The Court would find that the most important sections would be that [A.G. and J.G.] appear to be well adjusted in their current surroundings and that the father would be most likely to encourage and obey the approved parenting time for the Defendant. The Court would further find that the harm likely to be caused by a change in environment is outweighed by the advantages of the change of environment to [* * *]. The Court does indicate that it reviewed all Sub-sections A through J of R.C. 3109.04(F)(1) in making this Decision."

{¶40} Of the trial court's six-page decision, 4 ½ pages were devoted to

discussion of the evidence. While not specifically designated findings of fact, the

trial court observed, and we summarize, that:

1) Plaintiff had an interest in completing her Ph.D. at Auburn University and was required to be present there. She established her 2 older children there. On 2 prior occasions, Plaintiff had to file to recover his children from Alabama with orders of the court;

2) Each time, Defendant indicated she would move back to Lawrence County;

3) Plaintiff alleged that Defendant really was an Alabama resident who spent so much time in Alabama, that it would be in the best interests of the two younger boys to be placed with him as residential parent;

4) Appellant's friend, Mr. Bennett, stated he lived in her Alabama home for 2 years to look after her older children. He referred to himself as their guardian;

5) The veracity of Appellant's mother, who testified Appellant cared for her after surgery during the month of March was at issue, given that Facebook posts indicated Appellant spent a good portion of the month of March in Alabama;

6) In the Magistrate's Decision, the magistrate indicated information he received from E.C.O.T. made it clear the teaching equipment could be shuttled back and forth between locations, allowing Appellant to fulfill her teaching contract but also spend the majority of her time in Alabama;

7) Both parents seem to be loving and caring individuals;

8) The Court does find Appellant has had a strong and persistent interest in Alabama; and,

9) All the factors do indicate a change in circumstances and cause the Court to believe it is in the best interests of the minor children that Appellee be designated the residential parent.

**{¶41}** Based solely on the trial court's statement above, we have no reason to believe that the trial court failed to make an independent review or properly consider the statutory factors as related to the all the evidence adduced at hearing. Furthermore, despite Appellant's argument that, pursuant to R.C. 3109.04(F)(1)(d), the children's' adjustment to home, school, and community had not been considered, the trial court's decision emphasized the children seemed to be well-adjusted to their current surroundings. The trial court also commented, contrary to Appellant's assertion, that as relates to R.C. 3109.04(F)(1)(f), Appellee would be more likely to honor parenting time.

{¶42} Appellant also asserts the court interviewed the children in chambers without stating what their answers or wishes were and therefore, did not consider the R.C. 3109.04 (F)(1)(a) factor. Here, while the trial court did not mention in its decision that it considered the children's' wishes and concerns, when there is no evidence to the contrary, we will presume that the magistrate considered all relevant factors in determining custody. *See In re Johnson,* 7th Dist. Belmont No. 00BA4, 2001-Ohio-3277, *2; *Evans v. Evans,* 106 Ohio App.3d 673, 677, 666 N.E.2d 1176 (12th Dist.). Absent evidence to the contrary, the fact that the court interviewed the children is enough to demonstrate their wishes and concerns were considered. Without more, Appellant has not provided any evidence that the court failed to consider the children's wishes and concerns.

{¶43} Given that the trial court was in the best position to view witnesses, weigh credibility and make an obviously difficult decision, we decline to find that the trial court abused its discretion in designating Appellee the residential parent. As we have commented in numerous other opinions, it appears the trial court was faced with a difficult set of factors to evaluate. Here, we recognize that "child custody decisions involve some of the most difficult and agonizing decisions that trial courts are required to decide, [and that] courts must have wide latitude to consider all of the evidence * * *." *Seymour, supra,* at ¶ 28; *In re E.W.*, at ¶ 19. *See Davis*, 77 Ohio St.3d 418; *Bragg v. Hatfield,* 152 Ohio App.3d 174, 2003-Ohio-

1441, 787 N.E.2d 44, ¶ 24; *Hinton v. Hinton,* 4th Dist. Washington No. 02CA54, 2003-Ohio-2785, at ¶ 9; *Ferris v. Ferris,* 4th Dist. Meigs No. 02CA4, 2003-Ohio-1284, at ¶ 20. We also find no error of law requiring reversal. For the foregoing reasons, we find the trial court did not abuse its discretion.

**{¶44}** Having found the trial court did consider all the statutory factors required in a "best interests" analysis, we also find no merit to Appellant's third assignment of error and it is hereby, overruled. We proceed to consideration of the remaining arguments raised by Appellant.

3. The "Tender Years" Doctrine

**{¶45}** Appellant contends the "Tender Years Doctrine" is still in practice and that both her sons are within the age consideration for application of the doctrine. Appellant argues that the trial court failed to properly consider the fact that she was the primary caretaker of the minor children. Specifically, she points out the children have resided with her since birth, and that it is difficult for Appellee to offer primary caretaking when he works rotating shifts with only 2-3 days off each week. Appellant urges that Appellee cannot spend much time with the boys and keep a household routine.

**{¶46}** In *Shaffer v. Wagaman*, 2nd Dist. Clark No. 2012-CA-53, 2013-Ohio-509, ¶10, the appellate court recently stated:

> "The discredited tender-years doctrine presumes that the mother is
> entitled to custody of a child of tender years (absent proof that the

mother is unfit to be the child's custodian). *Martin v. Martin,* 2nd Dist. Montgomery No. 14312, 1994 WL 247194, *3 (June 8, 1994).  We have rejected "the idea that the mother should be given preference in a custody determination merely because of the tender years of the child." *In re Maxwell,* 8 Ohio App.3d 302, 304, 456 N.E.2d 1218 (2nd Dist.1982).  But we said that "who provide[s] the 'primary care' for the child prior to the custody award is however a very relevant factor." *Id.; Davis v. Davis,* 2nd Dist. Clark No. 2011–CA–71, 2012-Ohio-418, ¶ 8, quoting *Chelman v. Chelman,* 2nd Dist. Greene No. 2007 CA 79, 2008-Ohio-4634, ¶ 43."

{¶47}  We recently considered a similar argument to Appellant's in *McCoy v. Sullivan,* 4th Dist. Scioto No. 16CA3751, 2016-Ohio-8276.  On appeal of the trial court's custody decision designating the father the residential parent and legal custodian of the parties' four-year-old child, one argument the appellant asserted was that the trial court failed to fully consider the mother's role as the child's primary caregiver.  We disagreed, however, pointing out that the record revealed the court did, in fact, fully consider appellant's role.  The trial court wrote in its custody decision:

> "* * *[T]he Magistrate was well aware that the minor child was in the Defendant's care and custody during the child's tender years. * * * '[S]tatutory factors preclude any sort of presumptive quality being given to the tender years doctrine.' " *Id*. at ¶ 19.

{¶48}  In *McCoy,* we referenced an earlier decision in *Liming v. Damos*, 4th Dist. Athens No. 08CA34, 2009-Ohio-6490, ¶¶ 21-22, where we held:

> "[A]lthough not an enumerated statutory factor, a party's role as a primary caretaker is nevertheless a relevant factor to be considered in the best interest analysis. *See Carr v. Carr,* 4th Dist. Washington No. 00CA26, 2001-Ohio-2466; *Holm v. Smilowitz*, 83 Ohio App.3d 757,

615 N.E.2d 1047 (4th Dist.1992); *Thompson v. Thompson*, 31 Ohio
App.3d 254, 259, 511 N.E.2d 412 (4th Dist.1987). However, a trial
court should not rely on a primary caretaker determination as a
substitute for a searching factual analysis of the relative parental
capabilities of the parties, and the psychological and physical
necessities of the children. *Carr; Thompson.* Thus, the primary
caregiver doctrine is but one factor that a court should consider in
order to determine which parent should be the residential parent, but it
should not give presumptive weight over other relevant factors. *Carr;
Thompson*; *Winters v. Winters* (Feb.24, 1994), Scioto App. No. 2112."
*McCoy* at ¶ 20.

{¶49} As in *McCoy,* we find that the trial court considered all the relevant

factors of the best interest analysis when it considered the evidence in this case.

The trial court explicitly stated it reviewed all the statutory factors and we presume

the integrity of the court. We therefore disagree with Appellant that the trial court

failed to fully consider her role as primary caretaker to her children previously. As

such, we also find no merit to the first assignment of error and it is hereby

overruled.

4. Summary Judgment[11]

{¶50} Appellant first argues the trial court's decision is based on no

concrete information or fact. Appellant points out that Dr. Ford did not testify in

person, but his report was admitted into evidence as an exhibit. She contends that

Dr. Ford should have been brought into the courtroom to discuss the entirety of his

---

[11] Appellant designated her second assignment of error "That trial court erred in granting summary judgment to Appellee Robert Gould." We point out no summary judgment pursuant to Civil R. 56(C) was filed in this proceeding. The matter came before the trial court on Appellee's motion for custody and comes before this court on appeal of the trial court's judgment entry which agreed with the Magistrate's Decision designating Appellee as the residential parent.

report. To begin, as stated earlier in this opinion, none of the exhibits were admitted.

**{¶51}** We further point out the admission of evidence is within the sound discretion of the trial court. *State v. Huff*, 4th Dist. Scioto No. 14CA3596, 2015-Ohio-5589, ¶ 12; *State v. Jackson,* 4th Dist. Washington No. 12CA16, 2013-Ohio-2628, ¶ 16; *State v. Dixon*, 4th Dist. Scioto No. 09CA3312, 2010-Ohio-5032, ¶ 33, citing *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343, (1987), at paragraph two of the syllabus.  An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.,* 63 Ohio St.3d 498, 506, 589 N.E.2d 24 (1992); *Wilmington Steel Products, Inc. V. Cleveland Elec. Illuminating Co.,* 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991), citing *Berk v. Matthews,* 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

**{¶52}** It is well-established that pro se litigants are held to the same rules, procedures, and standards as litigants who are represented by counsel. *Seymour v. Hampton,* 4th Dist. Pike No. 11CA21, 2012-Ohio-5053, ¶ 30, citing *Crown Asset*

*Management, LLC, v. Gaul,* 4th Dist. Washington No. 08CA30, 2009-Ohio-2167,

¶ 15, citing *Selvage v. Emnett,* 4th Dist. Scioto No. 08CA3239, 2009-Ohio-940,

¶ 13. Litigants who choose to proceed pro se are presumed to know the law and

correct procedure, and are held to the same standards as other litigants. *Capital*

*One Bank, v. Rodgers,* 5th Dist. Muskingum No. CT2009-0049, 2010-Ohio-4421,

¶ 31.

{¶53} And, it is also well-settled that failing to object at the trial court level

to a complained of error results in a waiver of that error on appeal. *Seymour, supra,*

at ¶ 31; *See, e.g., Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099

(1997); *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 436-437,

659 N.E.2d 1232 (1996). Thus, an appellate court may recognize an error that an

appellant waived only if it constitutes plain error. *See, e.g., In re Etter*, 134 Ohio

App.3d 484, 492, 731 N.E.2d 694 (1st Dist.1998). Courts should exercise extreme

caution when invoking the plain error doctrine, especially in civil cases. Courts

should therefore limit applying the doctrine to cases "involving exceptional

circumstances where error, to which no objection was made at the trial court,

seriously affects the basic fairness, integrity, or public reputation of the judicial

process * * *." *Goldfuss,* 79 Ohio St.3d, at 122-123; *see also In re Alyssa C.,* 153

Ohio App.3d 10, 2003-Ohio-2673, at ¶ 35, 790 N.E.2d 803; *In re Curry*, 4th Dist.

Washington No. 03CA51, 2004-Ohio-750, at ¶ 42 (applying plain error doctrine, overruled on other grounds).

{¶54} Here, Appellant did not object to the report or the fact that Dr. Ford did not testify in person at the trial or in the Objections to the Magistrate's Report. Generally, " 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' " *McCoy, supra,* at ¶ 28, quoting *State v. Quarterman,* 130 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15, citing *State v. Awan,* 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs,* 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. Consequently, we are limited to plain-error review of this issue.

{¶55} We have addressed the court's analysis fully above. It does not seem that the magistrate or the trial court placed a great deal of emphasis on Dr. Ford's report or the testimony regarding it. As such, we disagree with Appellant's argument that any error occurred due to the fact that Dr. Ford did not testify in person. Certainly, we do not find plain error occurred.

{¶56} Under the second assignment of error, Appellant also argues that Appellee did not present a guardian ad litem report, as required by Sup.R. 48. However, within the argument portion of her brief, she does not make any separate

argument as to this issue.  Pursuant to App.R. 16(A)(7), we are not required to

address an argument that has not been separately set forth.  However, in the

interests of justice, we point out as follows:

> "The 'Rules of Superintendence are designed (1) to expedite the
> disposition of both criminal and civil cases in the trial courts of this
> state, while at the same time safeguarding the inalienable rights of
> litigants to the just processing of their causes; and (2) to serve that
> public interest which mandates the prompt disposition of all cases
> before the courts.' *Seymour, supra,* at ¶ 30, quoting *Nolan v. Nolan*,
> 4th Dist. Scioto No. No. 11CA3444, 2012-Ohio-3736, citing *State v.
> Singer,* 50 Ohio St.2d 103, 109-110, 362 N.E.2d 1216 (1977).  Courts
> have interpreted the Rules of Superintendence as general guidelines
> for the conduct of the courts that do not create substantive rights.
> *Singer* at 110 (stating that the Rules of Superintendence are not meant
> "to alter basic substantive rights"); *see also In re K.G.,* 9th Dist.
> Wayne No. 10CA16, 2010-Ohio-4399, at ¶ 11; *Allen v. Allen,* 11th
> Dist. Trumbull No.2009–T–0070, 2010-Ohio-475, at ¶ 31.  'They are
> not the equivalent of rules of procedure and have no force equivalent
> to a statute.  They are purely internal housekeeping rules which are of
> concern to the judges of the several courts but create no rights in
> individual defendants.' " *Nolan.*

{¶57}  In particular, Sup.R. 48 sets forth appointment procedures, report

requirements, and roles and responsibilities for guardians ad litem.  In this case, the

record does not reflect that a guardian ad litem was appointed, nor that either party

requested the court to appoint a guardian ad litem.  And, even so, while guardians

ad litem play important roles in child custody matters and in evaluating the interest

of children, their recommendations would not be binding upon this court. *Seymour,*

at ¶ 27; *In re RN,* 10th Dist. Franklin No. 04AP–130, 2004-Ohio-4420, ¶ 4.  The

trial court must be free to evaluate all of the evidence and determine, based upon

the entire record, the children's best interest. *Id.* (*See also Walton v. Walton,* 3rd Dist. Franklin No. 14–10–21, 2011-Ohio-2487, disagreeing that the trial court abused its discretion in failing to consider the testimony and report from a psychologist.)  As stated above, we have no reason to believe that the trial court failed to properly consider the statutory factors relating to the all the evidence adduced at hearing.  Based upon our review of Appellant's arguments under the second assignment of error, we do not believe the case warrants the application of the plain error doctrine.  Accordingly, we overrule the second assignment of error.

5. The Magistrate Exhibited Bias and Prejudice

{¶58}  Under the fourth assignment of error, Appellant argues the trial court abused its discretion when the magistrate made biased and prejudicial remarks during her testimony.  She points to Jud.Cond.R. 2.3 regarding performance of duties without bias or prejudice so as to impair the fairness of a proceeding. Appellant contends the magistrate made opinionated remarks during her testimony and manifested prejudice and bias by facial expressions and body language.  In particular, the magistrate commented: "[A] whole lot of teenagers use Facebook anymore.  Very few do. That I know of."[12]  She argues the magistrate's comments were improper and an abuse of discretion.  R.C. 2701.031 states as follows:

---

[12] The magistrate's above comment was preceded by these comments:  "You know, when My Space came out, all the kids were on it and then when us older people got on it, they left it and went to Facebook and then when us older people got on Facebook they left that and went to Twitter and us older people got on Twitter they left it and now it's Snapchat or something else or something else."

"If a judge of a municipal or county court allegedly is interested in a proceeding pending before the judge, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the judge or to a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the judge, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court. The affidavit of disqualification shall be filed and decided in accordance with divisions (B) to (E) of section 2701.03 of the Revised Code, and, upon the filing of the affidavit, the provisions of those divisions apply to the affidavit, the proceeding, the judge, and the parties to the proceeding."

**{¶59}** "Judicial bias is 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by law and the facts.' " *Viars v. Ironton,* 4th Dist. Lawrence No. 16CA8, 2016-Ohio-4912, quoting *Cooke v. Bowen*, 4th Dist. Scioto No. 12CA3497, 2013-Ohio-4771, ¶ 9-11, quoting *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34. R.C. 2701.03 provides the exclusive means by which a litigant can assert that a common pleas judge is biased or prejudiced and requires an affidavit of prejudice to be filed with the Supreme Court of Ohio. A court of appeals lacks "authority to pass upon disqualification or to void the judgment of the trial court upon that basis." *Beer v. Griffith,* 54 Ohio St.2d 440, 441-442, 377 N.E.2d 775 (1978).

**{¶60}** Appellant supports her argument with the above-referenced comment

the magistrate made about teenagers' use of Facebook and referencing his facial expressions and body language. "Trial judges are 'presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity.' " *Viars* at ¶ 58, quoting *Rick's Foreign Exchange Co. v. Greenlee,* 2nd Dist. Montgomery No. 26096, 2014-Ohio-4505, ¶ 28. "The appearance of bias or prejudice must be compelling to overcome these presumptions." *Id.*; *In re Jorgensen,* 5th Dist. Licking No. 07–CA–96, 2008-Ohio-2967, ¶ 245-246; *see generally State v. Dean,* 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 2. It is impossible for this court to consider vague complaints of the magistrate's facial expressions and body language when the alleged actions or conduct cannot be reflected in this record. As such, per our review of the record before us, we find no evidence of any judicial bias or prejudice to overcome the presumption of judicial integrity.

{¶61} Finally, Appellant also contends the magistrate overstepped his authority by interrogating her with regard to her employment. Specifically, Appellant states the Magistrate spoke with E.C.O.T. personnel regarding the mobility of the E.C.O.T. equipment. Appellant also points to conversations on August 30, 2016 and August 31, 2016, when the magistrate spoke with Appellant's middle school principal, the E.C.O.T. president, and the E.C.O.T. IT personnel. However, she states there is no report as to what was discussed and no mention in

the transcript that either counsel permitted the magistrate to contact E.C.O.T.

personnel in regards to equipment.

{¶62} We observe that in Appellant's Objections to the Magistrate's report,

page 4, Appellant acknowledges that, outside of the court, the magistrate asked

counsel for both parties for permission to speak with E.C.O.T. personnel regarding

the mobility of the ECOT equipment. Appellant further argues in her Objections at

pages 4-5 that the conversations should have been recorded for later review.

{¶63} Under these circumstances, we conclude that Appellant invited any

error. *See In the Matter of: A.S. and J.S.,* 4th Dist. Pike Nos. 16CA878 and

16CA879, 2017-Ohio-1166, ¶ 41. *State v. Jackson,* 149 Ohio St.3d 55, 2016–

Ohio–5488, 73 N.E.3d 414, ¶ 108, quoting *State ex rel. Kline v. Carroll,* 96 Ohio

St.3d 404, 2002–Ohio–4849, 775 N.E.2d 517, ¶ 27, citing *Lester v. Leuck,* 142

Ohio St. 91, 50 N.E.2d 145 (1943), paragraph one of the syllabus ("Under the

invited-error doctrine, 'a party is not entitled to take advantage of an error that he

himself invited or induced the court to make.' "); *Id.* at ¶ 122 (noting that invited

error doctrine applies "when a party * * * affirmatively consented to a procedure

that the trial court proposed"). For the foregoing reasons, we find no merit to

Appellant's fourth assignment of error. As such, it is hereby overruled.

CONCLUSION

{¶64} In these cases, we afford great deference to the factfinder's decision, given the trier of facts is in the best position to assess demeanor and other indicators of credibility. Based on the record, we find substantial credible and competent evidence supporting the trial court's decision. As stated, we find no abuse of discretion and no plain error. Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED**.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant any costs herein.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.:  Concur in Judgment Only.

For the Court,


BY:  _____
Matthew W. McFarland, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**